UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
KIERA TALLEY,

                    Plaintiff,

              -against-                            **MEMORANDUM & ORDER**
                                                                      Civil Action No. 08-790

BRENTWOOD UNION FREE SCHOOL DISTRICT,
BRENTWOOD BOARD OF EDUCATION,
MICHAEL COHEN, in his capacity as Superintendent
of the Brentwood Union Free School District,
GALE KIRKHAM, in her individual capacity and
as a member of the Board of Education for the
Brentwood School District, TOMAS DEL RIO,
in his individual capacity and as a member of the
Board of Education for the Brentwood School
District, and JOSEPH FRITZ, in his individual
capacity and as a member of the Board of Education
for the Brentwood School District, RESIDENTS FOR
BETTER SCHOOLS OF BRENTWOOD AND
NORTH BAY SHORE, NEW YORK, INC., A
Not-for-Profit Organization, and HELEN MOSS, in
her individual capacity.

                    Defendants
----------------------------------------------------------------------X

**APPEARANCES:**

**Ilana L. Deutsch, Esq.**
Attorney for Plaintiff
353 Veterans Memorial Highway
Suite 210
Commack, New York 11725

**Devitt Spellman Barrett, LLP**
Attorney for Defendants Brentwood Union Free School,
Brentwood Board of Education, Michael Cohen,
Gale Kirkham, Tomas Del Rio, and Joseph Fritz
50 Route 111
Smithtown, New York 11787
By: David H. Arntsen, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Kiera Talley ("plaintiff") commenced this action alleging violations of "(1) 42 U.S.C. § 1983; (2) 42 U.S.C. § 1985; (3) 42 U.S.C. § 1986; (4) the First Amendment of the United States Constitution . . .; (5) substantive due process rights and equal protection of the laws of the Fourteenth Amendment of the United States Constitution"; as well as New York State constitutional and statutory violations and common law causes of action. (Amended Complaint ¶ 1.) Presently before the Court is the motion of defendants Brentwood Union Free School District (the "District"), Brentwood Board of Education ("Board"), Michael Cohen ("Superintendent Cohen"), Gale Kirkham ("Kirkham"), Tomas Del Rio ("Del Rio") and Joseph Fritz ("Fritz") (collectively "District Defendants") to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, the motion is granted in part and denied in part.

## Background

The following allegations are taken from the amended complaint ("AC"):

Plaintiff, who is Caucasian, is the daughter of George M. Talley. George Talley became a member of the Board in 2004 and in or about May 2006 was elected its president. (AC ¶¶ 17, 18, 21, 28.) "In or about July 2007, [plaintiff] passed the last installment of her certification test, a necessary condition to a continued teaching position with any school district. As of July 2007, [plaintiff] was fully certified as a teacher in New York State." (AC ¶ 29.) "In or about July 2007," plaintiff was offered a "probationary contract"[1] for a special education teaching position

---

[1] "Probationary contract" is the term used in the complaint and amended complaint and accordingly is the term the Court shall use.

by Superintendent Cohen pending approval by the Board.[2] She accepted the offer and began teaching at the start of the 2007-2008 school year. (AC ¶¶ 31-32.)

"[W]ith the beginning of the 2007-2008 school year, tension mounted between the [] Members of the Board, including [plaintiff's] father." (AC ¶ 35.) "[T]he Board was divided on many issues and three of the members, Kirkham, Del Rio, and Fritz, called for the resignation of George Talley, due to disagreements with the way in which he cast his votes as a board member." (AC ¶ 36.)

The Board's vote on plaintiff's probationary contract was scheduled for September 18, 2007. The District has a nepotism policy which provides that "family members of the Board must obtain five out of seven votes in order to receive employment, as opposed to four out of seven votes for teachers unrelated to Board members." (AC ¶ 37, 39.)[3] Thus, plaintiff's probationary contract needed to be approved by five members of the Board. Plaintiff's probationary contract was not approved, however, as Kirkham, Del Rio and Fritz abstained from voting. Apparently as a result of the non-approval of her probationary contract, "[d]uring the next pay period and without notice, plaintiff was demoted to a substitute teaching position, reducing her compensation significantly and denying her all benefits she had previously

---

[2] According to the Amended Complaint, prior to this offer of employment, plaintiff was employed by the District in non-teacher positions. Specifically, it is alleged that "[i]n or about 1994 [she] began employment with [the District] as a Teacher's Assistant for the Head Start Program" and "[i]n 2000 she began working as a sign language interpreter . . . and performed such work until her termination in October 2007." She was also a student teacher in the District during the spring of 2006. (AC ¶¶ 22-24.)

[3] The Court notes that while the requirement for a super-majority is denoted in the amended complaint as a "policy of the Board," New York law requires a 2/3 majority vote by a board of education to employ a teacher who is related by blood or marriage to a board member. *See* N.Y. Educ. Law § 3016.

3

received." (AC ¶ 41.)

Approval of plaintiff's probationary contract was again placed on the Board's agenda for the October 3, 2007 meeting. "Five administrators appeared at the October 3, 2008 [sic] meeting to speak on [plaintiff's] behalf." Kirkham, Del Rio and Fritz failed to attend the October 3, 2007 meeting. (AC ¶ 43-45.)

Approval of plaintiff's probationary contract was then placed on the Board's agenda for October 20, 2007. "Kirkham, Del Rio and Fritz abstained from voting on [plaintiff's] probationary contract, thereafter terminating her employment with the [District]." (AC ¶ 46.) Talley then took the microphone to inquire from the Board as to the reasons for her termination and was "spoken to in a demeaning fashion by Board Members and was publicly yelled at, humiliated and embarrassed." When she inquired of the Board whether they thought she was qualified for the position,

> Kirkham smartly responded "if you say you are, then I guess you are." Kirkham stated that [plaintiff] was terminated for "personal reasons." . . . Del Rio responded to the same qualification question - "ask your father." At the same meeting, Kirkham stated on the record that there should be more "minority teachers" teaching in [the District] as it is a minority district. . . . Kirkham [who is alleged to be Black] is widely known in the district as advocating for more minority teachers to fill positions within the [District]. Kirkham and Del Rio [who is alleged to be Hispanic] also stated at that meeting that [George] Talley did not vote for Helen Moss' daughter when she was being considered for a teaching position in [the District], in connection with the discussion about [plaintiff.]

(AC ¶¶ 49-53.)

Plaintiff claims that Kirkham, Del Rio and Fritz terminated her in retaliation for associating with her father, that they "opposed" her father and "conspired to deny his daughter,

4

[plaintiff], a permanent position with the [District]." She also claims that Superintendent Cohen "knew of the conspiracy, but failed to prevent it although he had the power to do so . . . ." (AC ¶¶ 54-56.) She further claims that due to her relationship with her father, the Board treated her unequally to other teachers in violation of the Equal Protection Clause. (AC ¶ 57.)

Plaintiff alleges that following the September 18 and October 20 Board meetings, "Kirkham, Del Rio and Fritz spoke to Newsday about the circumstances surrounding [plaintiff], her denial of appointment, damaging her professional reputation and embarrassing her intentionally. [Plaintiff] was directed not to speak to the press." (AC ¶¶ 58-59.)

According to the Amended Complaint, plaintiff "has been the feature of several newspaper articles on Long Island and due to the Defendants Kirkham, Del Rio and Fritz and their willfulness, they have interfered with future contractual relations with other school districts by tarnishing [her] reputation" and "a representative of the [District] has given potential future employers of [plaintiff] a negative referral." (AC ¶¶ 61-62.)

School Board elections are held in May. In May 2008, Fritz was running for re-election and Helen Moss, whose daughter was denied a teaching position with the District, was a candidate for the Board. Moss and Fritz are officers of Defendant Residents for Better Schools. The night before the 2008 election,

> a newsletter arrived from Resident [sic] for Better Schools to the homes of *every* Brentwood resident, the subject of which was the impending election. The cover of the newsletter bore a photograph of the Plaintiff, next to a photograph of her father, George M. Talley, the President of the Board. Plaintiff did not give permission for her likeness to be used by Residents for Better Schools, Moss or Fritz. The brochure or newsletter reads:
> "Enough is Enough! George Talley <u>embarrassed</u> our community by pushing to hire his daughter at all costs!"

5

> "Newsday blasts Talley for his blatant abuse of power in
> trying to BULLY Board Members into hiring his daughter."
> "Nepotism Charges split board - bid to create job for
> daughter of Brentwood school president falls short; lawyer
> hired to investigate board members who opposed move."
> "Our efforts should be put toward improving our schools
> not settling Talley lawsuits!  The Talley lawsuit will
> undoubtedly cost the taxpayers well over $100,000!  What
> a waste!"
> "Tell George Talley to STOP WASTING OUR HARD
> EARNED TAX MONEY ON FRIVOLOUS LAWSUITS!"
>     . . . .
> On May 20, 2008 Fritz and Helen Moss individually sent out an
> additional letter to the entire Brentwood community and addressed
> "Dear Voter" that reads:
>     "4.  We lead by example and want to stop School Board
> [s]trife that started when George Talley insisted in hiring his
> daughter, a person who did not pass have [sic] the required test at
> the time of the hiring.  SIMPLY PUT if I did not pass the New
> York State Bar Exam I could not represent clients.  The same rules
> apply with teachers including George Talley's daughter."

(AC ¶¶ 70-74 (emphasis in original).)  According to plaintiff these statements are "utterly false."

Based on these allegations, plaintiff asserts eleven causes of action.  The first cause of action is pursuant to 42 U.S.C. § 1983 and claims that the District, the Board, Kirkham, Del Rio, and Fritz "retaliat[ed] against plaintiff on the basis of her race and intimate association with her father . . . ." (AC ¶ 76.)  The second cause of action is for conspiracy pursuant to 42 U.S.C. § 1985 and alleges that Kirkham, Del Rio, and Fritz "conspir[ed] to retaliate against plaintiff on the basis of her race and association with her father . . . ."  (AC ¶ 81.)  The third cause of action asserts a violation of 42 U.S.C. § 1986 in that Superintendent Cohen, Kirkham, Del Rio, and Fritz "through their knowledge of the Board member's [sic] conspiracy to retaliate against plaintiff on the basis of her race and association with her father and his [sic] failure to act to prevent [plaintiff's] termination though they each had the power to do so . . . ."  (AC ¶ 86.)  The

6

fourth cause of action asserts that "Defendants violated the First Amendment of the United States Constitution and article 1, section 8 of the New York State Constitution on the basis of [plaintiff's] freedom of her association with her father, a protected 'familial association' and as a direct result of [her father's] conduct, the way in which he cast his votes and voting history as a member of the [Board] . . . ." (AC ¶ 91.) The fifth cause of action asserts that "Defendants violated the Fourteenth Amendment of the United States Constitution, and article 1, section 11, of the New York State Constitution on the basis of their arbitrary denial of a protected right to privacy and confidentiality with respect to Ms. Talley's public employment where a strong likelihood existed that her appointment would have otherwise been granted in retaliation for her familial association with her father inasmuch as Defendants engaged in such outrageously arbitrary course of conduct . . . ." (AC ¶ 96.) The sixth cause of action alleges "Defendants violated the Fourteenth Amendment of the United States Constitution, and article 1, section 11, of the New York State Constitution on the basis of their denial of equal protection of the laws with respect to Ms. Talley in comparison to similarly situated teachers in [the District] . . . ." (AC ¶ 101.) The seventh through eleventh causes of action assert various claims pursuant to the statutory and common law of New York. The Court notes that the fourth through eleventh causes of action are asserted against "Defendants," presumably referring to all defendants, unlike the first three causes of action which are asserted only against certain defendants. The Court further notes that plaintiff does not allege that the District's nepotism policy violates her First Amendment Associational Rights.

## Discussion

I.      **Motion to Dismiss Standard**

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual

8

allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

## II. Documents Properly Considered on the Motion to Dismiss

In determining a motion to dismiss, a court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. R. 56 and afford all parties the opportunity to present supporting material."

*Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted).

As part of her opposition to District Defendants' motion, plaintiff has submitted her affidavit. Here, discovery has not occurred and therefore, given the nature of the suit, it is inappropriate to convert the instant motion to one for summary judgment. *See, e.g., Pearce v. Manhattan Ensemble Theater, Inc.,* 528 F. Supp. 2d 175, 179 n.3. (S.D.N.Y. 2007) (noting that because discovery had not yet occurred, conversion to summary judgment was inappropriate). Accordingly, the Court excludes from its consideration plaintiff's affidavit and shall consider only the factual allegations set forth in the Amended Complaint.

### III. The Section 1983 Claims

To state a claim under § 1983, a plaintiff must allege "(a) that the defendant is a 'person' acting 'under color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004); *see* 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Here, plaintiff asserts three federal rights - a First Amendment retaliation claim, a Fourteenth Amendment Due Process claim and a Fourteenth Amendment Equal Protection claim. The Court shall address these claims seriatim.

#### A. First Amendment Retaliation Claim

In <u>Adler v. Pataki</u>, 185 F.3d 35 (2d Cir. 1999), the Second Circuit addressed the right of intimate association. *Adler* involved a state employee alleged to have held a policy-making position, making him vulnerable to discharge because of political affiliation. The employee claimed he was unlawfully discharged, not because of his political affiliation but in retaliation for

a lawsuit filed against state officials by his wife. The employee claimed that the state's action in firing him violated his First Amendment right of intimate association. *Id*. at 38, 42. The district court granted summary judgment in favor of the defendants and the employee appealed.

The *Adler* court began its analysis by noting that "[t]he Supreme Court has recognized a right of association with two distinct components - an individual's right to associate with others in intimate relationships and a right to associate with others for the purpose of activities traditionally protected by the First Amendment, such as speech and other expressive conduct." *Id.* at 42 (citing *Roberts v. United States Jaycees*, 468 U.S. 609 (1984)). It then discussed that both the source of a right of intimate association and the standard applied in determining whether the right has been violated have varied. *Id.* at 42-44. As to Adler's claim, the court stated "[i]f the First Amendment accords an individual some right to maintain an intimate marital relationship free of undue state influence, Adler's claim properly invokes the protection of that Amendment. His claim is grounded on the most intimate of relationships, marriage, and warrants an appropriately high degree of protection." *Id.* at 44. The court concluded that "Adler can proceed with his claim that he was fired solely in retaliation for his wife's lawsuit, and not at all for reasons of political patronage" as he had proffered sufficient evidence to support that claim, which was appropriately analyzed under the First Amendment. *Id.* at 38, 45. The court then went on to discuss whether Adler was a policy maker and found that he was. The court concluded therefore that defendants would prevail if they ultimately demonstrated that he was in fact fired solely for reasons of political patronage. In the event defendants acted with mixed motives, i.e. they fired Adler both for reasons of political patronage and in retaliation for his wife's activities, then defendants would have the burden of demonstrating that it would have

11

taken the same action because of an available permissible motive. *Id.* at 46-47.

Relying upon *Adler*, as well as several subsequent district court cases,[4] District Defendants start with the proposition that while a First Amendment intimate association claim is assertable "in the context of retaliatory action against one family member based on the conduct of another in exercising a First Amendment right . . . the Second Circuit did not [and has not, extended *Adler*] to find actionable a claim by one family member that a state actor's mere dislike of another family member, resulting in an adverse action to the first family member . . . ." (Def. Mem in Supp. at 7).[5] They then proceed to argue that plaintiff has failed to allege any particular First Amendment activity engaged in by the plaintiff's father.

In the Court's view, however, the Amended Complaint does sufficiently allege the particular activity engaged in by plaintiff's father that resulted in the retaliation against her. Paragraph 91 of the Amended Complaint alleges that "Defendants" violated her First Amendment right "on the basis of her freedom of her association with her father, a protected 'familial association' and a direct result of his conduct, the way in which he cast his votes and voting history as a member of the [Board]" resulting in her demotion and eventual termination.

---

[4] District Defendants rely upon *Sutton v. Village of Valley Stream*, 96 F. Supp. 2d 189 (E.D.N.Y. 2000); *Sacay v. The Research Foundation of the City of New York*, 19 F. Supp. 2d 611 (E.D.N.Y. 2002); and *Berrios v. State University of New York at Stony Brook*, 518 F. Supp. 2d 409 (E.D.N.Y. 2007).

[5] There is no dispute that plaintiff's relationship with her father falls within the ambit of constitutionally protected intimate associations. *See also Piscottano v. Murphy*, 511 F.3d 247, 278 (2d Cir. 2007) ("Relationships that 'exemplify' constitutionally protected intimate associations 'are those that attend the creation and sustenance of a family,' such as 'marriage,' 'childbirth,' 'the raising and education of children,' and 'cohabitation with one's relatives.'") (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984); citing *Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh,* 229 F.3d 435, 438 (3d Cir. 2000)).

Nor is the Court persuaded by Defendants' conclusory allegations argument. While not overly abundant, there are factual allegations to support plaintiff's claim. For example, she alleges that Kirkham, Del Rio and Fritz called for her father's resignation due to disagreements with his voting. (AC ¶ 36). She also alleges that at the October 20, 2007 Board meeting when she inquired of the abstaining members regarding the vote on her appointment, Del Rio responded "ask your father." (AC ¶50.)

Accordingly, as framed by the District Defendants the motion to dismiss plaintiff's First Amendment claim is denied.

### B. The Fourteenth Amendment Due Process Claim

Relying upon the *Adler* court's pronouncement that intimate association retaliation claims "should be analyzed as violations of a First Amendment right of intimate association" and distinguishing such claims from those challenging state action which purport to regulate associational decisions which are assessed under substantive due process, District Defendants seek dismissal of plaintiff's substantive due process claim.

As set forth above, *Adler* requires plaintiff's retaliation claim to be analyzed under the First Amendment. The Court is simply is not persuaded by plaintiff's argument otherwise.

According to plaintiff her substantive due process rights were violated because

> Defendants in their campaign to membership of the Board of Education, have made Plaintiff's relationship to her father a platform, posting her picture and Mr. Talley's picture side by side, with defamatory text surrounding their images. . . . Defendants turned Plaintiff's private relationship with her father into a spectacle, claiming her unworthy of past employment within [the District]. Defendants wrongfully implied that Plaintiff failed the proper and necessary examinations to maintain a teaching position within the district and had taught in the past illegally. . . . Such

13

> statements put a strain on Plaintiff's relationship with her father, jeopardizing his reelection and Plaintiff's entire career. Furthermore, the Plaintiff attempted to distance herself from her father, simply to disassociate in the hopes of securing a position within [the District], a reaction infringing upon Plaintiff's privacy and ability to conduct her life as she wished.

(Pl.'s Mem in Opp. at 13). There are a number of problems with plaintiff's argument.

Notwithstanding plaintiff's amorphous use of the term "Defendants," according to the factual allegations contained in the amended complaint these actions were not taken by the District, the Board, Del Rio, Kirkham, or Fritz, in his capacity as a member of the Board. Thus the motion to dismiss must be granted as to these defendants. These actions were allegedly perpetrated by Helen Moss, Residents for Better Schools and Fritz, not as a member of the School Board, but rather as an officer of Residents for Better Schools and a mere candidate for the Board. As such, even if these actions offend substantive due process[6] the claim must be dismissed as there is an absence of state action, a necessary element of any § 1983 claim. *See* 42

---

[6] Substantive due process rights can be violated when the government has engaged in conduct so egregious it "shocks the conscious." *Rochin v. California*, 342 U.S. 165, 172 (1952). The Supreme Court has "been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Conduct that is merely incorrect or ill advised does not meet this high standard. *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). Even if all of plaintiff's factual allegations are true, it is highly doubtful that the conduct charged, as disturbing as it may be, would rise to the level of "shocking the conscience" consistent with relevant decisional law. *Cf. Ricioppo v. County of Suffolk*, 2009 WL 577727, * 15 (E.D.N.Y. March 4, 2009) ("Even if Plaintiff lost his job and was subjected to a peer review as a result of exercising his First Amendment rights, such actions do not "shock the conscience" in a manner that typically raises constitutional concerns; *Scatorchia v. County of Suffolk*, 2006 WL 218138, *4 (E.D.N.Y. Jan. 24, 2006) ("[E]ven if the touch was a battery, it would not violate her substantive due process rights."); *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996) (finding that conduct "shocked the conscious" where a sheriff raped a murder suspect); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3d Cir. 1989) (finding, in the sexual harassment context, that conduct "shocked the conscious" where a teacher committed multiple sexual assaults on his high school students).

U.S.C. § 1983.

Plaintiff's substantive due process claim (the fifth cause of action) is dismissed.

**C. Equal Protection Claims**

Plaintiff's equal protection claim appears to be two-fold. In her first cause of action she claims the decision not to vote upon her contract was motivated, at least in part, by race. In her sixth cause of action, she alleges a class-of-one theory in that her treatment was for arbitrary, vindictive or malicious reasons.

The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (citations omitted), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008); *accord Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). A plaintiff alleging a violation of her Equal Protection rights must demonstrate that she was treated differently "than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir. 2005) (citation omitted). *But cf. Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001) ("a plaintiff who . . . alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner . . . is not obligated to show a better treated similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection").

Here, plaintiff claims that she was treated differently because of her race. The factual

15

bases asserted to support this claim are (1) plaintiff is white whereas Del Rio is Hispanic and Kirkham is white; and (2) at the October 20, 2007 meeting "Kirkham stated on the record that there should be more 'minority teachers' teaching in [the District] as it is a minority district" and is "widely known in the district as advocating for more minority teachers to fill positions within the [District]." (AC ¶¶ 51-52.) Although not overwhelmed with this factual support, the Court finds it sufficient to state a race based Equal Protection claim as against Kirkham only. As to Del Rio and Fritz, the amended complaint simply "does not contain any factual allegations sufficient to plausibly suggest [their] discriminatory state of mind." *Iqbal*, 129 S. Ct. at 1952. Accordingly, the motion to dismiss that portion of the first cause of action that alleges an Equal Protection claim based on plaintiff's race is denied as to Kirkham but granted as to Del Rio and Fritz.

To the extent plaintiff's Equal Protection claim is premised on a "class of one" it fails as a matter of law. "The Supreme Court recently held that the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause based on a 'class of one' theory of liability." *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (citing *Engquist v. Or. Dep't of Agric.*, --U.S–, 128 S. Ct. 2146, 2155-57, 170 L. Ed. 2d 975 (2008)). Also, the absence of factual allegations of any similarly situated individual is fatal to this claim. *See Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). Plaintiff's class of one Equal Protection claim (the sixth cause of action) is dismissed.

**IV.    The Section 1985 and 1986 Conspiracy Claims are Dismissed.**

Section 1985(3) provides in pertinent part:

If two or more persons in any State or Territory conspire . . . for the purpose of

16

> depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Thus, under § 1985(3), plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988).

The §1985 claim fails because of plaintiff's failure to allege a conspiracy involving two or more persons or legal entities. *See* 42 U.S.C. § 1985(3) (requiring a conspiracy of "two or more persons"); *Girard v. 94th & 5th Avenue Corp.*, 530 F.2d 66, 70 (2d Cir. 1976) ("A legally sufficient § 1985(3) complaint must aver a conspiracy between two or more persons . . . ."). Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together. *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[] and employees, each acting within the scope of his employment."); *Girard*, 530 F.2d at 71;

17

*Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304-05 (E.D.N.Y. 2004); *Everson v. N. Y. City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (doctrine includes allegations of conspiratorial conduct between a public entity and its employees);. *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999). All of the individuals alleged to be part of the conspiracy are members of the same public entity, *i.e.*, the Brentwood Board of Education. Plaintiff does not allege any facts to support that any of the alleged conspirators were "'acting in their personal interests, wholly and separately from the corporation' or municipal entity." *Daniel v. Ling Island Housing Partnership, Inc.*, 2009 WL 702209, * 9 (E.D.N.Y. Mar. 13, 2009). The Court has carefully reviewed the amended complaint and finds that plaintiff has failed to allege facts to support that Del Rio, Fritz and Kirkham were acting solely in their personal interests, separate and apart from their duties as members of the Board. Accordingly, plaintiff's § 1985 claim is dismissed.[7]

Turning to the § 1986 claim, it is well-established that a violation of § 1986 is predicated on a violation of § 1985, as the former provides a remedy for the violation of the latter. *See, e.g., Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim . . . ."); *Daniel*, 2009 WL 702209, at * 10. Because plaintiff 's § 1985 claims fails as a matter of law, she cannot succeed on a § 1986 claim.[8]

The second and third causes of action are dismissed.

---

[7] The § 1985 claim also fails because of the deficiencies in her Equal Protection claims noted earlier.

[8] The court also notes that plaintiff's allegation that Cohen "knew of the conspiracy, but failed to prevent it although he had the power to do so in violation of 42 U.S.C. section 1986" is conclusory and, consistent with *Ashcroft*, *supra,* is not to be presumed true.

## V. The Claims Against Cohen Are Dismissed

The sole cause of action specifically alleged against Superintendent Cohen is the third cause of action pursuant to 42 U.S.C. § 1986 which, as discussed above, is dismissed. However, the fourth through eleventh causes of action are asserted against "Defendants" and therefore presumably against Cohen. However, the only *factual* allegation against Superintendent Cohen is that he offered plaintiff a probationary contract for the 2007-2008 school year. There are no allegations that he participated in any alleged constitutional deprivation. *See Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("It is well-settled in this Circuit that personal involvement of defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted); *accord Cole v. Goord*, 2009 WL 1181295, *5 (S.D.N.Y. Apr. 30, 2009); *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501 (S.D.N.Y. 2008). Nor are any facts plead to support Cohen's liability on the state law claims asserted. *See Ashcroft*, 129 S. Ct. at 1950 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief.").

Given the absence of facts in the amended complaint that would support any entitlement to relief by plaintiff against Cohen, all claims against him are dismissed.

## VI. The State Law Claims

Defendants' motion vis a vis the state law claims asserted by plaintiff is premised upon the argument that upon dismissal of the federal claims the Court should decline to exercise

supplemental jurisdiction.⁹ As all federal claims have not been dismissed, the motion to dismiss the state law claims is denied.

## *Conclusion*

For the reasons set forth above, District Defendants' motion to dismiss is granted to the following extent: the second, third, fifth, and sixth causes of action are dismissed in their entirety; all claims against Defendant Cohen are dismissed; and that portion of the first cause of action that alleges an Equal Protection violation by Defendants Del Rio and Fritz is dismissed. The motion is otherwise denied.¹⁰

**SO ORDERED.**

Dated: Central Islip, New York
      June 24, 2009

                                                  /s/
                                                  Denis R. Hurley
                                                  Senior District Judge

---

⁹ Defendants do assert, in a footnote, that the state law claims "though drawn such that they are alleged against 'Defendants' appear to be directed at only defendants Fritz, Moss and [Residents for Better Schools]. Insofar as they concern Fritz, they are devoid of factual bases and subject to Rule 12(b)(6) dismissal." However, such a cursory assertion does not warrant this Court addressing the sufficiency of the state law claims.

¹⁰ Based on a reference to qualified immunity in plaintiff's opposition papers, District Defendants, in their reply, ask this Court "to consider the initial moving papers amended to add a claim of dismissal of the action based upon [qualified immunity]." Defs.' Reply at 10. The Court declines to do so given the absence of sufficient briefing on the subject in the papers currently before the Court. Should District Defendants wish to pursue the issue of qualified immunity in a properly briefed motion they may do so upon compliance with this Court's Individual Practice Rules.