UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KIERA TALLEY,

                Plaintiff,

          -against-                                 **MEMORANDUM & ORDER**
                                                                   Civil Action No. 08-790
BRENTWOOD UNION FREE SCHOOL DISTRICT,         (DRH) (ETB)
BRENTWOOD BOARD OF EDUCATION,
MICHAEL COHEN, in his capacity as Superintendent
of the Brentwood Union Free School District,
GALE KIRKHAM, in her individual capacity and
as a member of the Board of Education for the
Brentwood School District, TOMAS DEL RIO,
in his individual capacity and as a member of the
Board of Education for the Brentwood School
District, and JOSEPH FRITZ, in his individual
capacity and as a member of the Board of Education
for the Brentwood School District, RESIDENTS FOR
BETTER SCHOOLS OF BRENTWOOD AND
NORTH BAY SHORE, NEW YORK, INC., A
Not-for-Profit Organization, and HELEN MOSS, in
her individual capacity.

                Defendants
------------------------------------------------------------------X

**APPEARANCES:**

**Ilana L. Deutsch, Esq.**
Attorney for Plaintiff
353 Veterans Memorial Highway
Suite 210
Commack, New York 11725

**Devitt Spellman Barrett, LLP**
Attorney for Defendants Brentwood Union Free School,
Brentwood Board of Education, Michael Cohen,
Gale Kirkham, Tomas Del Rio, and Joseph Fritz
50 Route 111
Smithtown, New York 11787
By: David H. Arntsen, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Kiera Talley ("Plaintiff") commenced this action alleging violations of "(1) 42 U.S.C. § 1983; (2) 42 U.S.C. § 1985; (3) 42 U.S.C. § 1986; (4) the First Amendment of the United States Constitution . . .; (5) substantive due process rights and equal protection of the laws of the Fourteenth Amendment of the United States Constitution"; as well as New York State constitutional and statutory violations and common law causes of action. (Amended Complaint ¶ 1.)[1] By Memorandum & Order dated June 24, 2009, familiarity with which is presumed, the Court ruled as follows on the motion to dismiss of defendants Brentwood Union Free School District (the "District"), Brentwood Board of Education ("Board"), Michael Cohen ("Superintendent Cohen"), Gale Kirkham ("Kirkham"), Tomas Del Rio ("Del Rio") and Joseph Fritz ("Fritz") (collectively "District Defendants"): (1) dismissed all claims against Superintendent Cohen; (2) denied the motion to dismiss the First Amendment claim; (2) dismissed the substantive due process claim; (3) dismissed the §§ 1985 and 1986 conspiracy claims; (4) dismissed the class of one Equal Protection claim; (5) dismissed the Equal Protection claim based on race against Del Rio and Fritz (but not as to Kirkham). Presently before the Court is a motion by Fritz, Del Rio, and Kirkham to dismiss the First Amendment claim and the remaining Equal Protection claim on the basis of qualified immunity. Also before the Court is Plaintiff's motion to amend the complaint to reassert the §§ 1985 and 1986 conspiracy claims against Del Rio, Fritz, Kirkham, and Cohen. For the reasons set forth below, the motions are

---

[1] Given that § 1983 is "the vehicle by which individuals may seek redress for alleged violations of their constitutional rights," *Mayo v. Utica City School District*, 1998 WL 59456 (N.D.N.Y. Feb. 9, 1998) (internal quotations omitted), the complaint must be read as asserting 1983 claims for alleged violations of Plaintiff's First Amendment and Fourteenth Amendment rights.

denied.

## Background

The following allegations are taken from the amended complaint ("AC"):

Plaintiff, who is Caucasian, is the daughter of George M. Talley. George Talley became a member of the Board in 2004 and in or about May 2006 was elected its president. (AC ¶¶ 17, 18, 21, 28.) "In or about July 2007, [Plaintiff] passed the last installment of her certification test, a necessary condition to a continued teaching position with any school district. As of July 2007, [Plaintiff] was fully certified as a teacher in New York State." (AC ¶ 29.) "In or about July 2007," Plaintiff was offered a "probationary contract"[2] for a special education teaching position by Superintendent Cohen pending approval by the Board.[3] She accepted the offer and began teaching at the start of the 2007-2008 school year. (AC ¶¶ 31-32.)

"[W]ith the beginning of the 2007-2008 school year, tension mounted between the [] Members of the Board, including [Plaintiff's] father." (AC ¶ 35.) "[T]he Board was divided on many issues and three of the members, Kirkham, Del Rio, and Fritz, called for the resignation of George Talley, due to disagreements with the way in which he cast his votes as a board member." (AC ¶ 36.)

The Board's vote on Plaintiff's probationary contract was scheduled for September 18,

---

[2] "Probationary contract" is the term used in the complaint and amended complaint and accordingly is the term the Court shall use.

[3] According to the Amended Complaint, prior to this offer of employment, Plaintiff was employed by the District in non-teacher positions. Specifically, it is alleged that "[i]n or about 1994 [she] began employment with [the District] as a Teacher's Assistant for the Head Start Program" and "[i]n 2000 she began working as a sign language interpreter . . . and performed such work until her termination in October 2007." She was also a student teacher in the District during the spring of 2006. (AC ¶¶ 22-24.)

2007. The District has a nepotism policy which provides that "family members of the Board must obtain five out of seven votes in order to receive employment, as opposed to four out of seven votes for teachers unrelated to Board members." (AC ¶¶ 37, 39.)[4] Thus, Plaintiff's probationary contract needed to be approved by five members of the Board. Plaintiff's probationary contract was not approved, however, as Kirkham, Del Rio and Fritz abstained from voting. Apparently as a result of the non-approval of her probationary contract, "[d]uring the next pay period and without notice, [P]laintiff was demoted to a substitute teaching position, reducing her compensation significantly and denying her all benefits she had previously received." (AC ¶ 41.)

Approval of Plaintiff's probationary contract was again placed on the Board's agenda for the October 3, 2007 meeting. "Five administrators appeared at the October 3, 2008 [sic] meeting to speak on [Plaintiff's] behalf." Kirkham, Del Rio, and Fritz failed to attend the October 3, 2007 meeting. (AC ¶¶ 43-45.)

Approval of Plaintiff's probationary contract was then placed on the Board's agenda for October 20, 2007. "Kirkham, Del Rio, and Fritz abstained from voting on [Plaintiff's] probationary contract, thereafter terminating her employment with the [District]." (AC ¶ 46.) Talley then took the microphone to inquire from the Board as to the reasons for her termination and was "spoken to in a demeaning fashion by Board Members and was publicly yelled at, humiliated and embarrassed." (AC ¶ 48.) When she inquired of the Board whether they thought

---

[4] The Court notes that while the requirement for a super-majority is denoted in the amended complaint as a "policy of the Board," New York law requires a 2/3 majority vote by a board of education to employ a teacher who is related by blood or marriage to a board member. *See* N.Y. Educ. Law § 3016.

4

she was qualified for the position,

> Kirkham smartly responded "if you say you are, then I guess you are." Kirkham stated that [Plaintiff] was terminated for "personal reasons." . . . Del Rio responded to the same qualification question - "ask your father." At the same meeting, Kirkham stated on the record that there should be more "minority teachers" teaching in [the District] as it is a minority district. . . . Kirkham [who is alleged to be Black] is widely known in the district as advocating for more minority teachers to fill positions within the [District]. Kirkham and Del Rio [who is alleged to be Hispanic] also stated at that meeting that [George] Talley did not vote for Helen Moss' daughter when she was being considered for a teaching position in [the District], in connection with the discussion about [Plaintiff.]

(AC ¶¶ 49-53.)

Plaintiff claims that Kirkham, Del Rio, and Fritz terminated her in retaliation for associating with her father, that they "opposed" her father and "conspired to deny his daughter, [Plaintiff], a permanent position with the [District]." (AC ¶ 55.) She also claims that Superintendent Cohen "knew of the conspiracy, but failed to prevent it although he had the power to do so . . . ." (AC ¶¶ 54-56.) She further claims that due to her relationship with her father, the Board treated her unequally to other teachers in violation of the Equal Protection Clause. (AC ¶ 57.)

Plaintiff alleges that following the September 18 and October 20 Board meetings, "Kirkham, Del Rio, and Fritz spoke to Newsday about the circumstances surrounding [Plaintiff], her denial of appointment, damaging her professional reputation and embarrassing her intentionally. [Plaintiff] was directed not to speak to the press." (AC ¶¶ 58-59.)

According to the Amended Complaint, Plaintiff "has been the feature of several newspaper articles on Long Island and due to the Defendants Kirkham, Del Rio, and Fritz and

5

their willfulness, they have interfered with future contractual relations with other school districts by tarnishing [her] reputation" and "a representative of the [District] has given potential future employers of [Plaintiff] a negative referral." (AC ¶¶ 61-62.)

School Board elections are held in May. In May 2008, Fritz was running for re-election and Helen Moss, whose daughter was denied a teaching position with the District, was a candidate for the Board. Moss and Fritz are officers of Defendant Residents for Better Schools. The night before the 2008 election,

> a newsletter arrived from Resident [sic] for Better Schools to the homes of *every* Brentwood resident, the subject of which was the impending election. The cover of the newsletter bore a photograph of the Plaintiff, next to a photograph of her father, George M. Talley, the President of the Board. Plaintiff did not give permission for her likeness to be used by Residents for Better Schools, Moss or Fritz. The brochure or newsletter reads:
> > "Enough is Enough! George Talley embarrassed our community by pushing to hire his daughter at all costs!"
> > "Newsday blasts Talley for his blatant abuse of power in trying to BULLY Board Members into hiring his daughter."
> > "Nepotism Charges split board - bid to create job for daughter of Brentwood school president falls short; lawyer hired to investigate board members who opposed move."
> > "Our efforts should be put toward improving our schools not settling Talley lawsuits! The Talley lawsuit will undoubtedly cost the taxpayers well over $100,000! What a waste!"
> > "Tell George Talley to STOP WASTING OUR HARD EARNED TAX MONEY ON FRIVOLOUS LAWSUITS!"
> > . . . .
> On or about May 20, 2008, Fritz and Helen Moss individually sent out an additional letter to the entire Brentwood community and addressed "Dear Voter" that reads:
> > "4. We lead by example and want to stop School Board [s]trife that started when George Talley insisted in hiring his daughter, a person who did not pass have [sic] the required test at the time of the hiring. SIMPLY PUT if I did not pass the New York State Bar Exam I could not represent clients. The same rules

apply with teachers including George Talley's daughter."

(AC ¶¶ 70-74 (emphasis in original).) According to Plaintiff these statements are "utterly false." (AC ¶ 74.)

The additional facts asserted in the proposed (second) amended complaint ("PSAC") shall be addressed to the extent necessary in connection with the motion to amend.

## Discussion

I. **Legal Standards**

   A. **Motion to Amend**

Federal Rule of Civil Procedure ("Rule") 15(a) provides, in pertinent part, that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend may properly be denied on the grounds of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the proposed amendment. *See Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the decision whether to allow a party to amend its complaint is left to the sound discretion of the district court, there must be good reason to deny the motion. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995); *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979).

"One appropriate basis for evaluating the productivity of a proposed amendment lies in the relative futility of accepting the proposed amended complaint." *Wilson v. Toussie*, 260 F. Supp. 2d 530, 535 (E.D.N.Y. 2003); *accord Jones v. N.Y. State Div. of Military & Naval Affairs*,

166 F.3d 45, 50 (2d Cir. 1999). If the proposed amendment would not survive a motion to dismiss, then it is appropriately denied as futile. *Wilson*, 260 F. Supp. 2d at 535 (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

### B. Motion to Dismiss Standard

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than

8

conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

## II.    The Motion to Amend is Denied as Futile

Plaintiff seeks to amend her complaint a second time in order to reassert the §§ 1985 and 1986 claims against Kirkham, Del Rio, Fritz, and Cohen. In dismissing those claims as asserted in the amended complaint, the Court wrote:

> The §1985 claim fails because of [P]laintiff's failure to allege a conspiracy involving two or more persons or legal entities. *See* 42 U.S.C. § 1985(3) (requiring a conspiracy of "two or more persons"); *Girard v. 94th & 5th Avenue Corp.*, 530 F.2d 66, 70 (2d

9

Cir. 1976) ("A legally sufficient § 1985(3) complaint must aver a conspiracy between two or more persons . . . ."). Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together. *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[] and employees, each acting within the scope of his employment."); *Girard*, 530 F.2d at 71; *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304-05 (E.D.N.Y. 2004); *Everson v. N. Y. City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (doctrine includes allegations of conspiratorial conduct between a public entity and its employees); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999). All of the individuals alleged to be part of the conspiracy are members of the same public entity, *i.e.*, the Brentwood Board of Education. Plaintiff does not allege any facts to support that any of the alleged conspirators were "'acting in their personal interests, wholly and separately from the corporation' or municipal entity." *Daniel v. Ling Island Housing Partnership, Inc.*, 2009 WL 702209, * 9 (E.D.N.Y. Mar. 13, 2009). The Court has carefully reviewed the amended complaint and finds that Plaintiff has failed to allege facts to support that Del Rio, Fritz and Kirkham were acting solely in their personal interests, separate and apart from their duties as members of the Board. Accordingly, Plaintiff's § 1985 claim is dismissed.

Turning to the § 1986 claim, it is well-established that a violation of § 1986 is predicated on a violation of § 1985, as the former provides a remedy for the violation of the latter. *See, e.g., Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim . . . ."); *Daniel*, 2009 WL 702209, at * 10. Because Plaintiff's § 1985 claims fails as a matter of law, she cannot succeed on a § 1986 claim.

The second and third causes of action are dismissed.

June 24, 2009 Order at 17-18 (footnotes omitted).

Although Plaintiff's proposed pleading contains additional factual allegations in support

of her conspiracy claim,[5] those additional facts do not remedy the deficiency in her claim. All of the members of the alleged conspiracy are members of the same public entity, viz., the Brentwood School District Board of Education, and acting within the scope of their duties. Accordingly, under the intracorporate conspiracy doctrine, they are legally incapable of conspiring together. *See, e.g., Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[] and employees, each acting within the scope of his employment.").

The motion to amend is denied as futile.

### III. The Motion to Dismiss on the Basis of Qualified Immunity is Denied

Defendants Del Rio, Kirkham, and Fritz maintain that they are entitled to qualified immunity on Plaintiff's First Amendment intimate association claim because said right is not clearly established. In addition, Kirkham asserts he is entitled to qualified immunity on the race-based Equal Protection claim. Before addressing these arguments, a brief discussion of qualified immunity is in order.

#### A. Qualified Immunity in General

"Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established

---

[5] The additional allegations include Cohen stating to Plaintiff's father, "Tell your kids to develop thicker skin. It's even hotter for your kids" (PSAC ¶ 33); Plaintiff receiving a termination letter from Cohen in June 2007 without the Board of Education voting on such termination and which letter has mysteriously disappeared from her personnel file (*id.*¶¶ 28-36); and regular private meetings by Kirkham, Del Rio, Fritz and occasionally Cohen (but excluding other Board members) "to plot their course of action against Talley's Father and to promote minority employment in Brentwood" (*id.* ¶ 37).

statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The doctrine "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibility and the need to shield officials from harassment, distraction, and liability when they perform their duties responsibility." *Pearson v. Callahan*, -- U.S. --, 129 S. Ct. 808, 815 (2009); *see also McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (stating that the doctrine of qualified immunity "is said to be justified in part by the risk that the fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.") (internal quotations omitted).

In order to serve its purpose, the availability of qualified immunity should be decided "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). When a defendant raises the defense of qualified immunity on a motion to dismiss rather than a motion for summary judgment, the defendant "must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Moreover, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support [her] claim, but also those that defeat the immunity defense." *Id.*; *accord Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008); *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir. 2003).

In determining the issue of qualified immunity, "courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d. Cir. 2010) (quoting *Pearson v. Callahan*, 129 S. Ct. at 815-

16). In this Circuit, "a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004). The determination of whether a right is clearly established "is judged against the backdrop of the law at the time of the conduct" and "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal citation omitted).

To be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

> "[E]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007). "[T]he matter of whether a defendant officials' conduct was objectively reasonable, i.e. whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." *Kerman v. City of New York,* 374 F.3d 93, 109 (2d Cir. 2004). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder." *Id.*

*Taravella,* 599 F.3d at 134-35.

**B. Qualified Immunity on the Race-Based Equal Protection Claim**

In its earlier decision the Court denied Kirkham's motion to dismiss the Equal Protection claim asserted against him. Plaintiff alleged that Kirkham's decision not to vote on her contract

13

was motivated, at least in part, by Plaintiff's race (white) and, in support of her claim of a race based animus, refers to statements allegedly made by Kirkham at the October 20, 2007 meeting that "there should be more 'minority teachers' teaching in [the district] as it is a minority district." After noting that "[t]he Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from 'invidious discrimination in statutory classifications and other governmental activity'" June 24, 2009 Order at 15 (citations omitted), the Court found the Plaintiff had stated a race based claim against Equal Protection. Having previously held that the facts alleged make out a violation of a constitutional right, the Court shall now proceed to the second part of the qualified immunity inquiry, viz., whether that right is clearly established.

In support of his claim for qualified immunity, Kirkham asserts:

> [e]ven if taken as true, Plaintiff's allegations that Kirkham has publicly stated that there should be more minority teachers in the district and that she was an advocate for filling positions with minority teachers could not possibly be construed by Kirkham as being an unlawful act with regard to this Plaintiff or her candidacy. Both alleged "facts" are, indeed, not facts at all but rather statements of opinion and/or sentiments attributed to Kirkham. It cannot be said that these sentiments are "acts" of actual conduct for which Kirkham can be held individually accountable to the plaintiff in this action. There is no existing component of the United States Constitution that prohibits advocacy for filling positions with qualified minority applicants and, therefore, the statements attributable to Kirkham cannot be construed to be unconstitutional, illegal, nor hardly unreasonable, actions directed at Plaintiff.

(Defs.' Mem. in Supp. at 7-8.)

Kirkham's argument misconstrues the nature of Plaintiff's claim as well as this Court's earlier decision. As this Court understands Plaintiff's claim, it is that she was fully qualified for the position and Kirkham's decision to abstain from voting for her teaching appointment was

14

motivated by Plaintiff's race. As support for her claim that that decision was racially motivated Plaintiff points to Kirkham's statement allegedly made at one of the meetings at which Kirkham abstained from the vote to appoint Plaintiff. In holding that Plaintiff had stated a claim, this Court did not conclude that advocating for qualified minority teachers was improper but rather that, drawing all inferences in Plaintiff's favor, the complaint sufficiently alleged that Kirkham's abstention on Plaintiff's appointment was racially motivated and that Kirkham's statements might indicate a discriminatory state of mind. If, in fact, Kirkham refused to support Plaintiff's appointment (i.e. abstained from voting) because of Plaintiff's race, she would have violated a clearly established right.

In sum, Kirkham has failed to demonstrate that she is entitled to qualified immunity based on the allegations in the complaint. *See generally Lee v. Sandberg*, 136 F.3d 94, 101 (2d Cir. 1997) (qualified immunity is an affirmative defense to be established by defendant). Which is not to say that the facts garnered after discovery will not warrant a different result. Kirkham's motion to dismiss the Equal Protection claim is denied.

### C. Qualified Immunity and the Right of Intimate Association

Relying principally on the decision in *Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999), moving defendants argue that "the Second Circuit's own admission that the 'nature and extent of the (right of intimate association) is hardly clear' renders it implausible, if not impossible, as a matter of law, for this right to have been 'clearly established' at the time of the alleged conduct of the defendants. Moreover, even if this Court were to find . . . the plaintiff's claimed right to intimate association to be 'clearly established', there is simply no basis upon which this Court could conclude, on the allegations contained within the Amended Complaint, that a reasonable

defendant would have understood from the existing law that his or her conduct was unlawful."
(Defs.' Mem in Supp. at 5.)

In response, Plaintiff maintains that "[t]he Right to Intimate Association is a constitutional right that is clearly recognized. . . . Contrary to Defendant's misleading assertions, *Adler v. Pataki* does not deny that the Right to Intimate Association <u>exists</u>, it simply wrestles with the origin of that right and the appropriate framework under which a claim should be analyzed. " (Pl.'s Opp. Mem. at 11.)

An appropriate starting point for the Court's analysis of this issue is to reiterate the standard for when a right is clearly established. As noted earlier, in this Circuit "a right is clearly established" if it meets the following three-part test: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004).

Both the Second Circuit and the Supreme Court have recognized a right of intimate association, *see Adler*, 185 F.3d at 42 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) and therefore the second prong of the "clearly established" test is met. *Cf. Patel v. Searles*, 305 F.3d 130, 139 (2d Cir. 2002) ( stating that "at least the general right to intimate association has been clearly established since 1984" and extends to children without limit to their age ). In *Adler*, the Second Circuit held that it was unconstitutional to fire an employee in retribution for a lawsuit the employee's spouse had filed against state officials, stating that such a discharge was well beyond the line of what is permissible, yet declining to identify where the line of demarcation is located.

16

Despite the more than ten years that have passed since the decision in *Adler*, the parameters of the right to intimate association have not been fully delineated. *See Poleo-Keefe v. Bergeron*, 2008 WL 3992636, at * 9 (D. Vt. Aug. 28, 2008) ("[B]oundaries of right of freedom of intimate association are largely unsettled and the Second Circuit has declined to articulate the level of review due to actions that infringe upon it. The contours of the right . . . are not sufficiently clear to enable a reasonable official to understand what actions would violate the right."); *see also Sacay v. The Research Foundation of the City Univ. of New York*, 193 F. Supp. 2d 611, 635 (S.D.N.Y. 2002); *Sutton v. Village of Valley Stream*, 96 F. Supp. 2d 189 (E.D.N.Y. 2000). Anti-nepotism rules have been upheld in the face of challenges claiming they unduly burden the right of intimate association. *See, e.g., Montgomery v. Carr*, 101 F.3d 1117 (6th Cir. 1996). Similarly, burdens on intimate associations have been held constitutional where government's interest have been strong enough, *see, e.g., Montgomery v. Stefanik*, 410 F.3d 933, 937-38 (7th Cir. 2005) (upholding termination of probation officer for purchasing car from probationer's employer because of government's interest in preventing fraternization between prisoner and correctional employee and avoiding the appearance of impropriety); *Beecham v. Henderson County*, 422 F.3d 372, 378 (6th Cir. 2005) (upholding termination based on intra-office romantic relationship because of government's interest in avoiding disruption in workplace) and unconstitutional where government's interest was insufficient, *see, e.g., Barrett v. Steubenville City Schools,* 388 F.3d 967, 972-73 (6th Cir. 2004) (school board members were not entitled to qualified immunity on claim that they failed to offer plaintiff a permanent teaching position because he enrolled his child in a private

17

school as parents have clearly established fundamental right to raise their children, including direct their education, and the government cannot deny someone employment simply because that person is exercising his fundamentally protected right); *Adkins v. Board of Education*, 982 F.2d 952, 955-57 (6th Cir. 1993) (district court erred in dismissed complaint alleging plaintiff was denied employment with a school board simply because of her marriage to a person who her employer disliked as while there was no contractual right to a job, plaintiff could not be deprived of her public employment for exercising a constitutional right). Nonetheless, *Adler* does establish that the right of intimate association is violated when a state employee is fired solely in retaliation for a spouse's lawsuit, itself a protected activity. It seems to this Court that, in light of *Adler*, a reasonable person would understand that the right of intimate association is violated when there is a refusal to hire one family member solely in retaliation for another family member's exercise of his or her First Amendment rights. *See generally Hope v. Pelzer*, 536 U.S. 735, 743 (2002) (in determining whether official is protected by qualified immunity, precise factual correspondence is not necessary; rather, the issue is whether the state of the law when the contested conduct occurred gave the official "fair warning" that the conduct was unconstitutional). Here, it is alleged that moving Defendants' actions or, perhaps more appropriately in view of the abstention allegation, inactions, are alleged to be "a direct result of [Plaintiff's father's] conduct, the way in which he cast his votes and voting history as a member of the [Board] . . . ." (AC ¶ 91.) Thus, at this pleading stage the Court cannot say that Plaintiff can prove no set of facts which would entitle her to relief. *Cf. Patel*, 305 F.3d at 140 (acknowledging uncertainty as to right of

intimate association but holding that at pleading stage plaintiff had alleged sufficient facts to establish a constitutional violation of his right to intimate association as to which defendants were not entitled to dismissal on the basis of qualified immunity); *Agostino v. Simpson,* 2008 WL 4906140, at *13 (S.D.N.Y. 2008) (denying motion to dismiss intimate association claim on basis of qualified immunity because allegations that defendants' actions were to punish plaintiff for protected activity of his father precluded court from concluding at pleading stage that defendants' actions were objectively reasonable). Which is to say that the existence of the qualified immunity defense may well depend on what facts Plaintiff is able to establish.

The motion to dismiss the First Amendment intimate association claim on the basis of qualified immunity is denied.

## Conclusion

Plaintiff's motion to further amend her complaint is denied. The motion of defendants Del Rio, Kirkham and Fritz to dismiss the First Amendment claim on the basis of qualified immunity is denied, as is Kirkham's motion to dismiss the Equal Protection claim.

**SO ORDERED.**

Dated: Central Islip, New York
      August 4 , 2010

/s/_____
Denis R. Hurley
Senior District Judge